```
         IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT CHARLESTON
```

UNITED STATES OF AMERICA

v.                              CRIMINAL NO. 2:18-cr-00151

MUHAMMED SAMER NASHER-
ALNEAM, M.D.

## MEMORANDUM OPINION AND ORDER

The defendant filed a Motion to Exclude the Testimony of Dr. Gene Kennedy (ECF No. 66) and a motion to Exclude the Testimony of Dr. Robert Kaniecki as to Muhammed Samer Nasher-Alneam (ECF No. 72). On January 30, 2019, the court held a pre-trial motions hearing to discuss, in part, the defendant's motions to exclude the government's proposed expert witnesses. On February 5, 2019, the court Ordered a Daubert hearing for the government's offered expert witnesses, Dr. Gene Kennedy and Dr. Robert Kaniecki, as well as the defendant's offered expert witnesses, James Murphy, M.D. and Richard Stripp, Ph.D. (See ECF No. 88). Due to health issues, Richard Stripp will no longer be used as an expert witness by the defendant. In light of this circumstance, the court has allowed the defendant time to secure an additional expert witness.

On March 5, 2019, the court held a Daubert hearing to consider whether to allow the testimony of the proffered witnesses. At the conclusion of the Daubert hearing, the court

**DENIED** the defendant's motions to exclude the testimony of Dr. Gene Kennedy and Dr. Robert Kaniecki. (ECF Nos. 66, 72). The court also concluded that the testimony of Dr. James Murphy was allowed.[1] The court found that Dr. Gene Kennedy, Dr. Robert Kaniecki, and James Murphy, M.D. are all qualified to testify as expert witnesses in the matter.

### I. The Legal Framework

For the parties' expert witnesses' testimony to be admissible, they must be qualified as experts pursuant to Rule 702 of the Federal Rules of Evidence. Rule 702 provides that:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Helpfulness to the trier of fact is the touchstone of Rule 702. Kopf v. Skyrm, 933 F.3d 374, 377 (4th Cir. 1993. Expert testimony "is presumed to be helpful unless

---

[1] There was no written motion to exclude the testimony of Dr. Murphy; however, based upon the government's Motion to Compel Disclosure of Defense Expert's Opinions, Bases, and Reasons for those Opinions (ECF No. 64) and the government's oral objections made at the pre-trial motions hearing on January 30, 2019, the court found a Daubert hearing for Dr. Murphy would best inform the court on how to rule on the government's objections.

it concerns matters within the everyday knowledge and experience of a lay juror." Id.

Under the Federal Rules of Evidence, trial judges must ensure that expert testimony is both relevant and reliable. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). The Supreme Court has emphasized that "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular testimony is reliable." Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 200 (4th Cir. 2001) (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999)). In Daubert, the Supreme Court established several factors trial courts may consider in admitting expert testimony, including (1) whether the expert's theory or technique has been or can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the theory is generally accepted. Daubert, 509 U.S. at 593-94; United States v. Crisp, 324 F.3d 261, 266 (4th Cir. 2003).

Although the Supreme Court provided a general framework for the analysis of expert testimony, no established procedure is required for a Daubert analysis. See United States v. Wilson, 484 F.3d 267, 274 (4th Cir. 2007) (stating "the test of

reliability is flexible and the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination"); see also Cooper, 259 F.3d at 199-200 ("[T]he factors discussed in Daubert [for analyzing expert testimony] were neither definitive nor exhaustive . . .. [P]articular factors may or may not be pertinent in addressing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."). Even though Federal Rule 702 "liberalize[d] the introduction of relevant expert evidence," the district court must balance that freedom with the persuasiveness of potentially misleading expert evidence. Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999). The court notes that the burden of showing the reliability of the opinion rests on the proponent of the opinion, who must show admissibility by a preponderance of the evidence. Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001).

## II. Underlying Charges Against Defendant

The defendant was a medical doctor licensed to practice medicine in the State of West Virginia. The defendant had an active Drug Enforcement Administration (DEA) registration number that allowed him to prescribe controlled substances, including Schedule II, III, IV, and V controlled substances for legitimate

4

medical purposes in the usual course of his professional medical practice and within the bounds of medical practice.  The defendant previously operated his medical practice, "Neurology & Pain Center, PLLC" in South Charleston, Kanawha County, West Virginia.  The defendant was the only practicing physician at Neurology & Pain Center.

In a Second Superseding Indictment, the defendant is charged with fourteen counts of illegal drug distribution, two counts of distribution causing death, two counts of maintaining a drug involved premises, and four counts of international money laundering.  (ECF No. 54).

### III. Government's Expert Witness, Dr. Gene Kennedy

Dr. Gene Kennedy received his medical degree from New York Medical College.  Dr. Kennedy completed a family medical residency at Wheeling Hospital in West Virginia.  Dr. Kennedy has operated a pain management clinic in Saint Simons Island, Georgia for approximately fourteen years.  He holds a pain management license, issued by the State of Georgia.  Dr. Kennedy treats patients on a referral basis.  To date, Dr. Kennedy has over 1,000 charts in his system--most of which are patients treated with narcotics.

Since approximately 2008, Dr. Kennedy has conducted peer reviews for the Georgia State Medical Board. In this role, he looks at standard of care issues to determine whether the

treatment given complies with the requisite standards of care. Additionally, Dr. Kennedy has taught on the subject of pain management as an adjunct professor.

Dr. Kennedy has served as an expert witness on the topic of chronic pain management seven times in federal courts in Virginia, Alabama, and Georgia. Dr. Kennedy stated that these cases were mostly criminal, and he has never been rejected as an expert in chronic pain management.

Dr. Kennedy was given nineteen (19) of the defendant's patient charts to review in preparation of this case. According to Dr. Kennedy, his role was to opine as to whether there was a legitimate medical purpose for the defendant's treatment of his patients. Dr. Kennedy also explained that he reviewed the charts to determine whether the medicine was distributed within a legitimate guide-post. His methodology in reviewing the patient charts included looking at the diagnosis, treatment and the documentation. Dr. Kennedy stated that the manner in which he reviewed the patient charts is accepted in the medical community as the proper framework, and that he applied these guidelines in reviewing the defendant's patients' charts. Dr. Kennedy prepared an expert report, dated September 2, 2018, opining, in sum, that:

> In reviewing the 19 medical charts that you provided, I have concluded that the preponderance of the scheduled medication prescriptions provided by Dr.

> Nasher were not for a legitimate purpose. In
> supporting this position I would note: [p]ast medical
> treatment histories were frequently not obtained. [. .
> .] Physical examinations were uniformly documented by
> rote and not credible. [. . .] The follow up encounter
> documentation in the charts is performed by rote, non-
> credible, and not medically legitimate. [. . .]
> Toxicology screening to assure compliance was not
> credible. [. . .] Appropriate patient/physician
> relationships were not maintained.

(ECF no. 66-2). Dr. Kennedy based his review of the nineteen patients' charts upon the Federation of State Medical Boards' Model Policy for Use of Opioids in the Management of Pain, published in 2013. Dr. Kennedy stated that this model policy has been adopted by many states, including West Virginia. Dr. Kennedy also stated that he relied upon the Drug Enforcement Practitioner's Manual, which outlines DEA policies on prescribing schedule medications. Dr. Kennedy also reviewed surveillance footage in reaching his opinions.

The court finds that Dr. Gene Kennedy is qualified to testify as an expert in this matter. Dr. Kennedy's testimony is relevant, reliable, and will be helpful to the jury, based upon his medical schooling, his experience teaching on the subject of pain management and testifying in court on the subject, and his experience in operating a pain management practice since 2004, in which he treats patients with opioids. Furthermore, the methods used by Dr. Kennedy have been subject to peer review and publication, and they are standard practices. Thus, the

7

defendant's Motion to Exclude the Testimony of Dr. Gene Kennedy (ECF No. 66) is **DENIED**.

**IV. Government's Expert Witness, Dr. Robert Kaniecki**

Dr. Robert Kaniecki went to Washington University School of Medicine and focused on neurology. His residency focused primarily on neurology and he was the chief resident. After completing his residency in 1982, he worked at Allegheny General Hospital and formed a headache center there. Dr. Kaniecki is board certified by the American Academy and holds a dual certification in neurology and headache medicine.

Currently, Dr. Kaniecki works at the University of Pittsburgh, where he is an associate professor of neurology and also works at the Allegheny General Headache Center. At the University of Pittsburgh, he teaches first-year students and residents, and specializes on lectures on headaches and neurology. Specifically, he teaches first-year students the subject of anti-migraine medications and teaches the pain fellows and the pharmacology graduates. At the Headache Center, Dr. Kaniecki has approximately 10,000 patients; a majority of their patients suffer from headaches, migraines, facial pain, and concussion and trauma. About 10-20% of these patients have a diagnosis of headaches and chronic pain.

Dr. Kaniecki's methodology for reviewing the defendant's patients' records involves looking at the diagnosis management

explained on the document, with a specific focus on the management of patients with headaches.  Dr. Kaniecki was asked to review the standard of care used by the defendant and to make determinations of whether the medicine was given in good faith. In a report dated January 20, 2017, Dr. Kaniecki explains that he bases his opinions on eight different references and guidelines.  During the Daubert hearing, Dr. Kaniecki stated that these guidelines have been subject to peer review and publication and are relied upon in the field of headache management. Dr. Kaniecki will only opine on the defendant's patients with headaches.

The court finds that, because Dr. Kaniecki is a certified neurologist, has treated over 10,000 patients—10-20% of which were treated for chronic pain, and the standards he has applied in his review have been subject to peer review and publication, his testimony is relevant, reliable, and will be helpful to a jury.  Thus, the defendant's motion to Exclude the Testimony of Dr. Robert Kaniecki as to Muhammed Samer Nasher-Alneam (ECF No. 72) is **DENIED**.

**V.    Defendant's Expert, James Murphy, M.D.**

Dr. James Murphy attended the University of Louisville School of Medicine.  He then did a psychiatry internship at the Naval Medical Center and worked as a naval flight surgeon for the Naval Aerospace Medical Institute.  He did an anesthesiology

residency with the University of Louisville and a Pain Management Fellowship with the Mayo Clinic. In 2013, he received a Master of Medical Management Degree from the University of Southern California.

Dr. Murphy holds the following certifications: American Society of Addiction Medicine, American Board of Addiction Medicine, American Board of Preventive Medicine, American Board of Pain Medicine, and various certifications through the American Board of Anesthesiology—including certification in pain management. Furthermore, Dr. Murphy has been an Instructor of Anesthesiology at the Mayo Medical School and is currently an Assistant Clinical Professor in Anesthesiology.

Dr. Murphy will offer his assessment of Dr. Nasher's patients' charts and files and their Board of Pharmacy Reports. Dr. Murphy will also provide expert opinions regarding four recorded visits of a specific patient. Dr. Murphy will testify generally about proper diagnosis, treatment and protocols, and documentation in pain management practice. Furthermore, Dr. Murphy will describe the standards or care applicable to chronic pain management at the time of the conduct alleged in the indictment. Dr. Murphy's review of the defendant's treatment will be based upon accepted guidelines for the treatment of chronic pain, including the 2009 guidelines adopted by the American Academy of Pain Medicine and the American Pain Society,

the regulations applicable to Chronic Pain Management Clinics as adopted by the West Virginia Office of Health Facilities Licensure and Certification, and other accepted standards or guidelines relating to the treatment of chronic pain.

Dr. Murphy is expected to opine that Dr. Nasher's role in prescribing controlled substances was for a legitimate medical purpose in the usual course of professional practice for the treatment of chronic non-cancer pain. He is expected to testify with respect to particular patients—both generally in the overall treatment of these patients and specifically with respect to each patient visit.

The court finds that Dr. Murphy's education, certifications, and experience qualify him to testify as an expert witness in this matter. The court finds that Dr. Murphy's opinions are relevant and reliable and will be helpful to the jury. Thus, Dr. Murphy may testify as an expert witness in this matter.

## VI. Conclusion

For all the foregoing reasons, the court finds that Dr. Gene Kennedy, Dr. Robert Kaniecki, and James Murphy, M.D. are qualified to testify as expert witnesses in the instant matter. Therefore, the defendant's Motion to Exclude the Testimony of Dr. Gene Kennedy (ECF No. 66) and the motion to Exclude the

Testimony of Dr. Robert Kaniecki as to Muhammed Samer Nasher-Alneam (ECF No. 72) are **DENIED**.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record, to the United States Marshal for the Southern District of West Virginia, and to the Probation Office of this court.

**IT IS SO ORDERED** this 25th day of March, 2019

**ORDER:**

_____
David A. Faber
Senior United States District Judge