IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

UNITED STATES OF AMERICA

v.                                    CRIMINAL NO. 2:18-cr-00151

MUHAMMED SAMER NASHER-
ALNEAM, M.D.

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court is defendant Muhammed Samer Nasher-Alneam, M.D.'s motion made at trial under Rule 29(b) of the Federal Rules of Criminal Procedure for judgment of acquittal and Brief in Support by Muhammed Samer Nasher-Alneam of (Oral) Motion for Judgment of Acquittal (ECF No. 181).  The government filed a Response in Opposition.  (ECF No. 197).  For the reasons that follow, the defendant's motion is **GRANTED**, in part, and **DENIED**, in part.

## I.   BACKGROUND

After the government presented its case, the defendant orally moved for a judgment of acquittal on counts five, sixteen, fifteen, and nineteen through twenty-two.  The court reserved its ruling on the motion.  Following the 15-day trial, four of which days the jury deliberated, the jury communicated to the court on the record they would not be able to reach a unanimous decision as to any Count of the Second Superseding Indictment.  After the jury communicated this to the court, the defendant made an oral motion for a mistrial.  The court granted

the defendant's motion on the record.  The defendant then orally renewed its motion for judgment of acquittal on the specific counts discussed below.

## II.  APPLICABLE LAW

On deciding a motion under Rule 29, the court must view the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences to be drawn from that evidence.  United States v. Bailey, 819 F.3d 92, 95 (4th Cir. 2016); United States v. Lespeir, 725 F.3d 437, 447 (4th Cir. 2013); United States v. Royal, 731 F.3d 333,337 (4th Cir. 2013); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).  The trial court is not permitted to judge the credibility of the witnesses; it must assume that the jury resolved all contradictions in favor of the government.  United States v. Romer, 148 F.3d 359, 364 (4th Cir. 1998), cert. denied, 525 U.S. 1141 (1999).  When a motion for judgment of acquittal is made at the conclusion of the government's case in chief and the court reserves its ruling, the court must decide the motion on the basis of the evidence at the time the ruling was reserved.  Fed. R. Crim. P. 29(b).

## III. ANALYSIS

### A. Defendant's Allegation that Count Sixteen Should Be Dismissed.

Count Sixteen of the Second Superseding Indictment charges the defendant with the illegal distribution of oxycodone and

2

oxymorphone, resulting in the death of A.J.  The defendant
argues that he should be acquitted of this count for two main
reasons.  First, the defendant argues that it would be
unconstitutional to permit the jury to convict Dr. Nasher
without reaching unanimity as to a single distribution of a
controlled substance whose use resulted in the death of a
patient.[1]  (See ECF No. 181, p. 2).  Second, the defendant argues
that the government's case did not provide sufficient evidence
for a jury to determine beyond a reasonable doubt that the
oxycodone found post-mortem in A.J.'s body is attributable to
drugs obtained from the defendant.  (See id., p. 3).  Because
only the defendant's second argument relates to the sufficiency
of the government's evidence, the court will only consider this
argument for the Rule 29 analysis.  See U.S. v. Mackins, 32 F.3d
134, 138 (4th Cir. 1994) (explaining that a judgment of
acquittal must be based upon the insufficiency of the evidence).

In support of his argument that the government presented
insufficient evidence for Count Sixteen, the defendant states
that the government presented no evidence that the February 3,
2015 Percocet[2] prescription was ever picked up at the pharmacy.
(ECF No. 181, p. 2).  The defendant further states that "[t]he

---

[1] Dr. Nasher sought dismissal of Count Sixteen prior to trial
based upon this argument.  (ECF No. 118).
[2] Percocet is the brand name for a tablet that combines oxycodone
and aceteminophen, or Tylenol.

February 24, 2015 Percocet prescription—alleged to cause the death of A.J.—was torn up and thrown away in a bus station in Columbus, Ohio." Id. Thus, the defendant argues that the government presented insufficient evidence for a reasonable jury to conclude that any Percocet prescription was ever filled leading up to the death of A.J. Id.

The court finds that there was sufficient evidence for a jury to reach a reasonable conclusion that A.J. filled and picked up the prescription for Percocet on February 3, 2015. As the government detailed in its responsive brief to the defendant's motion, while the February 3, 2015 prescription does not appear on the West Virginia Board of Pharmacy record for A.J., FBI Special Agent Jennifer King testified that the prescription was retrieved from BeWell and the prescription has a sticker on it indicating that the prescription was filled. (See ECF No. 197, p.6). The February 3, 2015 prescription was for a 30-day supply of Percocet. See id. The government argues that this evidence coupled with the testimony of Ricky Johnson, who testified that the February 24, 2015 Percocet prescription was too early to fill, would allow a jury to reasonably conclude that A.J. filled and picked up the prescription of Percocet on February 3, 2015. Id. The court agrees with the government as to the sufficiency of this evidence.

Thus, because the court finds that the government presented sufficient evidence for a jury to determine beyond a reasonable doubt that the oxycodone found post-mortem in A.J.'s body is attributable to drugs obtained from the defendant, the defendant's motion for a judgment of acquittal for Count Sixteen is **DENIED.**

### B. Defendant's Contention That He Should Be Acquitted of Count Fifteen.

Count Fifteen of the Second Superseding Indictment charges the defendant with the illegal distribution of oxycodone, resulting in the death of S.S.  First, the defendant argues there was not competent evidence presented at trial from which a jury could conclude that S.S.'s death resulted from the use of substances prescribed by him.  (ECF No. 181, p. 3).  Second, the defendant argues his Sixth Amendment confrontation rights were violated because he did not have the opportunity to cross-examine the individual at NMS Lab, located in Willow Grove, P.A., who conducted the toxicology analysis regarding S.S.  Id.

Regarding the sufficiency of evidence at trial, the court agrees with the government that there was sufficient evidence in the record to permit a reasonable jury to return a verdict of guilty on Count Fifteen.  As the government highlighted in its Response in Opposition to the defendant's motion for judgment of acquittal:

Dr. Gene Kennedy testified that the oxycodone
prescription issued by the defendant to S.S. on
September 9, 2014, was not for a legitimate medical
purpose and was issued outside the course of a
legitimate medical purpose.  Dr. Stacey Hail testified
that oxycodone, which was prescribed to S.S. by Dr.
Nasher only three days before his death, was the cause
of death.  Robert Crawford further testified about the
behavior of S.S. on the night he died, telling the
jury that S.S. was removing oxycodone pills from a
prescription medicine bottle, crushing them, and
snorting them.  Corporal Howell, who responded to
S.S.'s residence to investigate the unattended death,
corroborated the account of Mr. Crawford when he
testified about observing white powder residue, a
hammer covered with white residue, and two straws on a
table in the residence.  Finally, Government's Exhibit
31, the Board of Pharmacy report for S.S., indicates
that he filled the prescription issued by defendant
for oxycodone on September 9, 2014, and was not
obtaining oxycodone from any other doctor.

(ECF No. 197, pgs. 4-5) (internal citations omitted).

The court finds the government accurately described

the evidence presented at trial, and that this evidence is

sufficient for a reasonable jury to determine that the

defendant distributed the oxycodone on September 9, 2014,

without a legitimate medical purpose and outside the bounds

of medical practice, and that the oxycodone ultimately

caused the death of S.S.

Turning to the defendant's confrontation right

argument, the government cites to Lockhart v. Nelson, 488

U.S. 33, 40 (1988) in its brief in response to the

defendant's motion for judgment of acquittal for Count

Fifteen.  (ECF No. 197, p. 4).  In Lockhart, the Supreme

Court explained that retrial, rather than a judgment of acquittal, is the appropriate resolution if evidence was improperly admitted against a defendant and without such improperly-admitted evidence there would not have been sufficient evidence to convict. Id. The court finds Lockhart to be controlling, and thus, finds that a new trial is the proper remedy for the defendant's inability to cross-examine the individual who obtained the lab results presented on the death certificate, not a judgment of acquittal on this count. Thus, because a new trial is being afforded, the court finds that the defendant's Sixth Amendment confrontation right argument is moot as it relates to the pending motion for judgment of acquittal.

Therefore, because the court finds that there was sufficient evidence for a reasonable jury to return a verdict of guilty on Count Fifteen, and because the defendant's constitutional objection can be cured through a new trial, the defendant's motion for judgment of acquittal on Count Fifteen is **DENIED.**

### C. Defendant's Allegation That He Should Be Acquitted for Count Five Because There Is No Evidence of Unlawful Distribution.

Count Five of the Second Superseding Indictment charges the defendant with knowingly and intentionally distributing a quantity of a controlled substance to his brother, B.N., not for

7

legitimate medical purposes in the usual course of professional
medical practice and beyond the bounds of medical practice in
violation of 21 U.S.C. § 841(a)(1).  The defendant's argument in
support of his motion for judgement of acquittal regarding this
count is that "[t]he sum total of the government's evidence on
Count Five was that Dr. Nasher wrote a prescription to his
brother, that he did not create a medical chart for his brother,
and that there is no rule which either (1) prohibits prescribing
for family members, or (2) requires a physician to create a
chart."  (ECF No. 181, p. 6).

        The government responds to the defendant's argument by
stating:

>        the jury heard evidence that defendant issued a
>        months' worth of a strong opioid to his brother with
>        no documentation whatsoever of the reasons for the
>        distribution or the manner in which the drug was
>        distributed. The jury also heard from Dr. Kennedy that
>        prescribing controlled substances to family members
>        and prescribing without documentation are not
>        acceptable medical practice.  Sufficient evidence was
>        presented at trial for the jury to conclude that
>        defendant distributed methadone to his brother with no
>        legitimate medical purpose and outside the bounds of a
>        professional medical practice.

(ECF No. 197, p. 3).

        The court finds that, viewing this evidence in the light
most favorable to the government, a judgment of acquittal is not
warranted because the evidence is sufficient for a reasonable
jury to reach a determination of guilt.  Specifically, the court

believes there is sufficient evidence for the jury to assess the credibility of Dr. Kennedy's expert opinion as to the legitimacy of the defendant's prescriptions to his brother in conjunction with other circumstantial evidence and make a reasoned decision as to the defendant's guilt.  Therefore, the defendant's motion for a judgment of acquittal as to Count Five is **DENIED.**

### D. Defendant's Allegation That There is No Evidence of Money Laundering to Support a Jury Conviction for Counts Nineteen though Twenty-Two

Counts Nineteen, Twenty, Twenty-One and Twenty-Two of the Second Superseding Indictment charge the defendant with "international money laundering" in violation of 18 U.S.C. § 1956(a)(2)(B)(i).  The Second Superseding Indictment alleges the defendant knowingly transferred funds from a place in the United States to and through a place outside the United States, knowing that the funds involved in the transfer represented the proceeds of some form of unlawful activity and in fact involved the proceeds of specified unlawful activity, that is, he knowingly and intentionally distributed Schedule II and III controlled substances, not for legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical practice in violation of 21 U.S.C. § 841(a)(1).

As explained by the United States Court of Appeals for the Fourth Circuit, to sustain a conviction under 18 U.S.C. § 1956(a)(2)(B)(i), the government must prove:

(1) The defendant conducted or attempted to conduct a financial transaction having at least a de minimus effect on intrastate commerce or involving the use of a financial institution which is engaged in, or the activities of which have at least a de minimus effect on, intrastate commerce; (2) the property that was the subject of the transaction involved the proceeds of specified unlawful activity; (3) the defendant knew that the property involved represented the proceeds of some form of unlawful activity; and (4) the defendant knew that the transaction was designed in whole or part, to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the unlawful activity.

U.S. v. Wilkinson, 137 F.3d 214, 221 (4th Cir. 1998)(internal citations omitted)(citing 18 U.S.C. § 1956(a)(2)(B)(i)). In a prosecution under 18 U.S.C. § 1956(a)(1)(B)(i), the government must prove "a specific intent to structure a transaction so as to conceal the true nature of the proceeds." See U.S. v. Gilliam, 975 F.2d 1050, 1056 (4th Cir. 1992).  Thus, to establish the fourth element, the Government must prove a specific intent to conceal.  United States v. Villarini, 238 F.3d 530, 533 (4th Cir. 2001) (citing Gilliam, 975 F.2d at 1056).

The court construes the defendant's argument in support of a judgment of acquittal to be that the government's evidence for Counts Nineteen though Twenty-Two is deficient as to the second and fourth elements.  Based upon a thorough review of the evidence at trial, the court concludes that the government failed to provide sufficient evidence to support the fourth

10

element—namely, concealment of the transferred funds.  Thus, the
court's analysis will focus on the sufficiency of the
government's evidence concerning the defendant's concealment of
the alleged illegally internationally transferred money.

Here, the defendant contends the government's evidence
fails to demonstrate concealment.  (See ECF No. 181, pg. 7).
The defendant argues that "the government's 'concealment theory'
is that Dr. Nasher transferred funds from his business—which he
owns-into his personal account—which he also owns—before walking
into a BB&T branch and instructing the bank staff to send money
to support his family overseas."  (ECF No. 181, p. 7).  In
support of his argument that a judgment of acquittal for counts
Nineteen through Twenty-Two is appropriate, the defendant
states:

> The wire transfer evidence in this case is simple,
> straightforward, and was followed with ease.  Dr.
> Nasher transferred money from his business account
> into his personal account.  He then walked into a bank
> branch and instructed the bank staff to transfer money
> abroad.  Nothing about these transactions concealed
> the source, origin, nature, or ownership of the funds
> at issue.  Nothing about these transactions created
> the false appearance of legitimate wealth.  Nothing
> about these transactions constitutes international
> money laundering.

(ECF No. 181, p. 8).

In response, the government states that the evidence of the
defendant transferring money from his business account to his
personal account before sending it overseas, the defendant's

accountant only having access to his business account statements and not personal account, and the "vague reasons" for sending money to his family members overseas all demonstrate the defendant's attempt to conceal his transaction. (ECF No. 197, p. 8).

Upon comparing the facts of this case to the law in this jurisdiction, the court is not persuaded by the government's concealment argument. Both parties cite to Wilkinson, 137 F.3d 214 in support of their arguments.

In Wilkinson, 137 F.3d 214, the defendants transferred funds between bank accounts with the knowledge that the receiver of the funds would doctor the books to conceal the true nature and source of the funds. Therefore, the Wilkinson court found that a judgment of acquittal was not proper where "the jury was entitled to infer that the [d]efendants would not have transferred the funds unless they knew that [the receiver of the funds] would doctor the books upon receipt of the funds, and thus was entitled to find that the [d]efendants structured the transactions so as to conceal their true nature and source." Wilkinson, 137 F.3d at 223.

The court finds that in the present case, unlike the evidence in Wilkinson, 137 F.3d 214, there is no evidence to demonstrate that, by transferring money from his business account to his personal account and then sending the money to

12

his family overseas, Dr. Nasher had the specific intent to design this transaction to conceal the nature and source of the funds.

Likewise, the Fourth Circuit has also denied a motion for a judgment of acquittal based upon substantial evidence of the defendant's specific intent to conceal the transaction.  See Villarini, 238 F.3d 530.  In Villarini, the defendant, who worked as a bank teller, embezzled $83,000 by overstating bank customer deposits over a period.  Id.  To conceal the money and make it look like her legitimate stream of income, the defendant made separate, smaller deposits into her personal account over a span of time.  Id. at 533.  The court found that this was substantial evidence of the defendant's specific intent to conceal the transaction and was sufficient to support the verdicts of guilty on the money laundering counts.  Id.

The present case is distinguishable from Villarini 238 F.3d 530, because the government has not presented sufficient evidence that the defendant utilized a scheme or plot with the specific intent that his transactions would be concealed and not detected.  The court finds that the government's argument that his "unnecessary step of transferring the funds from his business account to his personal account" is not persuasive because this is not sufficient evidence of a specific intent to conceal a transaction.  (See ECF No. 197, p.8).  The court

13

agrees with the defendant that transferring money from his business to his personal account was a legitimate and normal action of a business owner.  Thus, the court finds a reasonable jury could only conclude that the defendant's action of transferring money from his business account to his personal account was legitimate and does not demonstrate an attempt to conceal an unlawful transaction.

Additionally, the government's contention that the "vague reasons" for transferring the money overseas was the defendant's attempt to conceal the transactions is not persuasive.  (ECF No. 197, p.8).  The defendant's overseas wire transfers had notations for things such as purchasing a bakery and an apartment for the defendant's family overseas.  (See Gov.'s Exhibits 76 - 79).  At trial, there was evidence to corroborate the fact that the defendant's family was in need of financial assistance, and that property such as a bakery and an apartment were acquired for the use of the defendant's family.  The government did not present evidence that the defendant's notations on the wire transfers were unusual or untruthful, i.e., designed to conceal or disguise.  See § 1956(a)(1)(B)(i). The court finds that the government's alleged "vague statements" for the wire transfers does not amount to a showing that the defendant's transaction "was "designed," at least in part, to conceal or disguise the "nature," "location," "source,"

"ownership," or "control"" of the money.  See Regalado Cuellar
v. U.S., 553 U.S. 550 (2008).

Furthermore, the government contends that there were other
circumstances surrounding the defendant's wire transfers to show
defendant's intent to conceal.  (ECF No. 197).  In the
government's brief in response to the defendant's motion, it
states:

> the two transactions on November 12, 2014 were sent to
> family members that purportedly lived at the same
> address, and defendant had to pay a $65.00 wire fee
> for each of these transactions.  The transactions on
> February 2, 2017, was also purportedly for defendant's
> brother, "Bassam Nacher Alnam" who was listed on
> defendant's personal account and could have accessed
> it just as defendant did.

Id.

The court finds that this type of evidence is still
insufficient for a reasonable jury to conclude beyond a
reasonable doubt that the defendant intended to conceal a
transaction.  In light of the alleged approximately $900,000
that the defendant has wire transferred to his family over the
years, this one time occurrence of the defendant paying a wire
fee of $65.00 twice so that he could send money separately to
two different family members does not rise to a level of
significance to support a conviction for money laundering.
Furthermore, the fact the defendant's brother allegedly had
access to the defendant's personal bank account is not

sufficient evidence to satisfy the government's burden under Section 1956(a)(1)(B)(i).

Thus, the court finds that a reasonable jury would not have a sufficient evidentiary basis to support a finding of guilt beyond a reasonable doubt as to Counts Nineteen through Twenty-two. See e.g., United States v. Espaillet, 380 F.3d 713, 718 (2d Cir. 2004) ("[A] judgment of acquittal" is warranted "only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.").

Therefore, because the government has failed to present evidence sufficient to support the requisite concealment element of 18 U.S.C. § 1956(a)(1)(B)(i), the court **GRANTS** the defendant's motion for a judgment of acquittal as to Counts Nineteen through Twenty-Two.

In light of the government filing a Third Superseding Indictment that repeats the money laundering counts in the Second Superseding Indictment, the court **DISMISSES** Counts Forty-Four through Forty-Seven from the Third Superseding Indictment: this action is necessary to protect the defendant's Fifth Amendment constitutional right against double jeopardy. See Richardson v. U.S., 468 U.S. 317, 325 (1984) ("we recognize that the protection of the Double Jeopardy Clause by its terms

16

applies only if there has been some event, such as an acquittal, which terminates the original jeopardy.").

## IV.   CONCLUSION

For all these reasons, the court **GRANTS** in part and **DENIES** in part, the defendant's Motion for Judgment of Acquittal. Thus, the court **ACQUITS** the defendant of Counts Nineteen through Twenty-Two, **DISMISSES** Counts Forty-Four through Forty-Seven from the Third Superseding Indictment, and **DENIES** this motion for judgment of acquittal as to all other counts.

The Clerk is directed to send a copy of this Order to counsel of record, the United States Marshal for the Southern District of West Virginia and the Probation Office of this Court.

**IT IS SO ORDERED** this 26th day of June, 2019.

**ENTER:**

David A. Faber
Senior United States District Judge