IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

MUHAMMED SAMER NASHER-ALNEAM,

    Plaintiff,

v.                                  CIVIL ACTION NO. 2:21-00360
                                    (Criminal Action No. 2:18-00151)

UNITED STATES OF AMERICA,

    Defendant.

### MEMORANDUM OPINION AND ORDER

    By Standing Order, this action was referred to United States Magistrate Judge Cheryl A. Eifert for submission of findings and recommendations regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Eifert submitted to the court her Findings and Recommendation on May 16, 2022, in which she recommended that the district court grant defendant's request for dismissal, deny Nasher-Alneam's motion under 28 U.S.C. § 2255 and dismiss this matter from the court's docket.

    In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted fourteen days, plus three mailing days, in which to file any objections to Magistrate Judge Eifert's Findings and Recommendation. The failure of any party to file such objections constitutes a waiver of such party's right to a de novo review by this court. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989). Moreover, this court need not

conduct a de novo review when a plaintiff "makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Nasher-Alneam filed objections to the PF&R. See ECF No. 352. He also filed a motion seeking an enlargement of time to supplement his objections. See ECF No. 353. That motion is **GRANTED** and the court has considered ECF No. 354 (Memorandum of Law in Support of Objections). Approximately a month later, Nasher-Alneam filed another motion seeking additional time to supplement the record with the case of Ruan v. United States, 142 S. Ct. 2370 (2022). That motion is **GRANTED** insofar as the court has considered Ruan.

## I. Background

Nasher-Alneam was a medical doctor licensed to practice medicine in the State of West Virginia. See ECF No. 223 at ¶ 1 (Third Superseding Indictment). From on or about July 2013 through February 2018, Dr. Nasher-Alneam owned and operated a medical practice called "Neurology & Pain Center, PLLC," located in Kanawha County, West Virginia. Id. at ¶¶ 2-3. During the relevant time period, Dr. Nasher-Alneam had an active Drug Enforcement Administration (DEA) registration number that allowed him to prescribe controlled substances, including

Schedule II, III, IV, and V controlled substances.  See id. at ¶ 8.

On July 26, 2018, a federal grand jury returned a 15-count indictment against Nasher-Alneam arising out of his activities in connection with Neurology & Pain Center, PLLC.  See ECF No. 1.  A second superseding indictment was returned on November 21, 2018, charging defendant with illegal drug distributions, in violation of 21 U.S.C. § 841(a)(1); illegal drug distributions resulting in death, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1); and international money laundering, in violation of 18 U.S.C. § 1956(a)(2)(B)(ii).

Trial on the second superseding indictment began on April 16, 2019.  After the jury was unable to reach a verdict on any of the twenty-two counts, a mistrial was declared on May 7, 2019.  Defendant invoked his rights under the Speedy Trial Act and the retrial was scheduled for July 22, 2019

After the declaration of a mistrial, on June 12, 2019, Nasher-Alneam was charged in a forty-seven count third superseding indictment charging him with various offenses related to operation of his medical practice.  Specifically, defendant was charged with the following:

3

    1)    health care fraud, in violation of 18 U.S.C. § 1347 and § 2 (Counts One through Eleven and Fifteen through Twenty-four);

    2)    health care fraud resulting in death, in violation of 18 U.S.C. § 1347 and § 2 (Counts Twelve through Fourteen);

    3)    illegal drug distributions, in violation of 21 U.S.C. § 841(a)(1) (Counts Twenty-five through Thirty-eight);

    4)    illegal drug distributions resulting in death, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Counts Thirty-nine through Forty-one);

    5)    maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1) (Counts Forty-two and Forty-three); and

    6)    international money laundering, in violation of 18 U.S.C. § 1956(a)(2)(B)(ii) (Counts Forty-four through Forty-seven).[1]

See ECF No. 223.

Pursuant to a written plea agreement with the United States, Nasher-Alneam pled guilty to Count 25 of the third superseding indictment charging him with illegal distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1). See ECF No. 291. As to the factual basis for the plea, Nasher-Alneam agreed that:

    On or about July 15, 2014, at or near South Charleston, Kanawha County, West Virginia, I provided

---

[1] The court granted defendant's motion for judgment of acquittal as to the money laundering counts and the corresponding counts in the third superseding indictment were dismissed. See ECF No. 231.

>a prescription to patient B.N., for 90 10 mg methadone pills, a Schedule II controlled substance. I did not maintain any medical record for patient B.N. nor did I document any justification as to the legitimate medical purpose for distributing the controlled substance. For these reasons, this distribution was not within the bounds of professional medical practice or for a legitimate medical purpose.
>
>On or about July 23, 2014, at or near South Charleston, Kanawha County, West Virginia, I provided a second prescription to patient B.N., this time for 120 30 mg oxycodone pills, a Schedule II controlled substance. Again, I did not maintain any medical record for patient B.N. nor did I document any justification as to the legitimate medical purpose for distributing the controlled substance. For these reasons, this distribution was not within the bounds of professional medical practice or for a legitimate medical purpose.
>
>While the B.N. identified in each prescription described above was the same person, B.N.'s last name was spelled differently on the first prescription and a different date of birth was listed. Additionally, each prescription was filled at a different pharmacy, contrary to the terms of the pain contract I required my patients to sign.

Id. Under the terms of the plea agreement, which was one pursuant to Federal Rule of Civil Procedure 11(c)(1)(C), the parties agreed that a sentence of imprisonment of at least 60 months in prison and no more than 120 months in prison was the appropriate disposition in the case. See id. Nasher-Alneam was sentenced to a term of imprisonment of 63 months and a term of supervised release of three years. He did not file a direct appeal.

## II.  Analysis

In his Motion to Vacate, Nasher-Alneam asks the court to void the provision of his plea agreement restricting his right to seek a new license to practice medicine.  He maintains that his attorney was ineffective for advising him that felons cannot "get their medical licenses reinstated in any state" when that was not true.  ECF No. 336.  The PF&R concluded that Nasher-Alneam's motion was without merit because the relief he sought, i.e., rewriting the parties' plea agreement, was not available under 28 U.S.C. § 2255.  The PF&R also found that Nasher-Alneam could not prevail on his ineffective assistance of counsel claim because he could not satisfy the two-prong Strickland test.

In his objections, plaintiff does not grapple with the analysis in the PF&R which explains why his motion should be denied.  Instead, he asserts that he "believe[s] that this federal court has no jurisdiction over a state related matter such as a medical license" and that "tak[ing] away [his] medical license is brutal punishment for [his] whole family and three children."  ECF No. 352.  He also does not address the deficiencies noted in the PF&R as to his ineffective assistance of counsel claim.

Essentially, Nasher-Alneam is asking this court to rewrite his plea agreement by removing a provision he doesn't like.

This the court cannot do. See United States v. Boucher, 998 F.3d 603, 608-09 (4th Cir. 2021) ("[C]ourts cannot rewrite plea agreements."). Based upon the language of Rule 11, "a plea agreement may not be accepted or rejected on a piecemeal basis." United States v. Brooks, 78 F.4th 138, 143 (5th Cir. 2023) (cleaned up). "This anti-piecemeal rule means that 'a court choosing to accept a plea agreement does not then have the option to perform a judicial line-item veto, striking a valid appeal waiver or modifying any other terms.'" Id. (quoting United States v. Serrano-Lara, 698 F.3d 841, 844-45 (5th Cir. 2012)); see also United States v. Scanlon, 665 F.3d 796, 798 (D.C. Cir. 2012) ("Modification of the [plea] agreement is not an option."); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999) (explaining that "[m]odification of the terms of a plea agreement is . . . beyond the power of the district court," as "[s]uch a modification would impermissibly alter the bargain at the heart of the agreement"). This court is "not authorized to modify or amend [Nasher-Alneam]'s plea agreement" and "he is unable to cite any case in which a plea agreement was amended or modified by the court at the unilateral request of one of the parties." Scanlon, 666 F.3d at 798. Nasher-Alneam's argument is without merit and his objection is **OVERRULED**.

7

As for any argument that Nasher-Alneam did not knowingly or willingly plead guilty, such an assertion is belied by the record.

> [A] defendant's solemn declarations in open court affirming [a plea] agreement . . . carry a strong presumption of verity because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. Indeed, because they do carry such a presumption, they present a formidable barrier in any subsequent collateral proceedings. . . . Thus, in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false.

United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (citations and quotation marks omitted).

Nasher-Alneam's ineffective assistance of counsel claim also fails. The standards established by the United States Supreme Court in determining whether a defendant was denied his Sixth Amendment right to effective assistance of counsel are set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). Under Strickland, a plaintiff must show (1) that counsel's performance was so deficient that it "fell below an objective standard of reasonableness," and (2) that counsel's deficiency resulted in prejudice so as to render the results of the trial unreliable. See id. at 687-92. Counsel's performance is entitled to a presumption of reasonableness. See id. at 689.

Thus, a habeas plaintiff challenging his conviction on the grounds of ineffective assistance must overcome a strong presumption that the challenged actions constituted sound trial strategies. See id. The Court in Strickland cautioned against the ease in second-guessing counsel's unsuccessful assistance after the adverse conviction and sentence are entered. See id. The Fourth Circuit Court of Appeals specifically recognized that ineffective assistance of counsel may not be established by a "Monday morning quarterbacking" review of counsel's choice of trial strategy. Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991), cert. denied, 506 U.S. 1087 (1993).

"To show prejudice in the guilty-plea context, the petitioner must 'demonstrate a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Christian v. Ballard, 792 F.3d 427, 443-44 (4th Cir. 2015) (quoting Premo v. Moore, 562 U.S. 115, 129 (2011)).

> [T]he Strickland standard "is a most deferential one." Harrington, 562 U.S. at 105, 131 S. Ct. 770. "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge" and "[i]t is all too tempting to second-guess counsel's assistance after conviction or adverse sentence." Id. (internal quotation marks omitted). . . .

\* \* \*

9

> "[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system," Blackledge v. Allison, 431 U.S. 63, 71, 97 S. Ct. 1621, 52 L. Ed.2d 136 (1977), and the advantages that they provide to all concerned "can be secured . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "[R]epresentations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Id. at 73-74, 97 S. Ct. 1621. Such "[s]olemn declarations in open court carry a strong presumption of verity" and "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Id. at 74, 97 S. Ct. 1621. "More often than not a prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea," because "[i]f he succeeds in vacating the judgment of conviction, retrial may be difficult." Blackledge, 431 U.S. at 71, 97 S. Ct. 1621. "These considerations make strict adherence to the Strickland standard all the more essential when reviewing the choices an attorney made at the plea bargain stage." Premo, 562 U.S. at 125, 131 S. Ct. 733.

Id. at 444.

Under the second prong of Strickland, a petitioner must show that the errors were "sufficiently serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Furthermore, a court may address the two prongs in any order and a failure to establish one prong obviates a need to address the other. Id. at 697 ("Although we have discussed the performance component of an ineffectiveness

claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.").

As discussed above, under Strickland, not only must Nasher-Alneam show that his counsel's performance was deficient, he also must show that he was prejudiced by that performance. A court can reasonably reject a petitioner's claim of prejudice if the "decision to reject the plea agreement and proceed to trial . . . would not have been a rational one." Christian, 792 F.3d at 452 (citing Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).

> When evaluating objective reasonableness under the prejudice prong of Strickland, "[t]he challenger's subjective preferences . . . are not dispositive; what matters is whether proceeding to trial would have been objectively

> reasonable in light of all of the facts." United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012). The challenger "cannot make that showing merely by telling [the court] now that [he] would have gone to trial then if [he] had gotten different advice." Pilla v. United States, 668 F.3d 368, 372 (6th Cir. 2012). In other words, to obtain relief from a guilty plea, the defendant must do more than allege he would have insisted on going to trial if counsel had not misadvised him as to the consequences of that decision. The "petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla, 559 U.S. at 372, 130 S. Ct. 1473; see also Roe v. Flores-Ortega, 528 U.S. 470, 486, 120 S. Ct. 1029, 145 L. Ed.2d 985 (2000).

Id. at 452-53.

In the instant case, Nasher-Alneam has failed to allege a plausible ineffective assistance of counsel claim consistent with Strickland's demanding standard. As discussed above, in the context of guilty pleas, the prejudice prong requires the defendant to demonstrate a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. As Magistrate Judge Eifert noted, Nasher-Alneam does not assert, much less prove, that he would have gone to trial on the charges alleged in the indictment had it not been for his attorney's alleged failures. This is fatal to his claim. See Hill v. Lockhart, 474 U.S. 52, 60 (1985) ("We find it unnecessary to determine whether there

may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel, because in the present case we conclude that petitioner's allegations are insufficient to satisfy the Strickland v. Washington requirement of 'prejudice.'  Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial.").

After the PF&R was filed, Nasher-Alneam asked for an additional ninety days to pursue a claim pursuant to Ruan v. United States, 142 S. Ct. 2370 (2022).  Nasher-Alneam never submitted any further materials in support of this claim or explain how Ruan entitled him to relief.  See United States v. Kim, 71 F.4th 155 (4th Cir. 2023) (rejecting argument that defendant's guilty plea had to be set aside under Ruan).  Nor does he explain how that claim would not be barred by the waiver contained in his plea agreement.  Nasher-Alneam's plea agreement contained an appeal waiver in which

> Dr. Nasher and the United States both knowingly and voluntarily waive[d] the right to seek appellate review of the conviction and of any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742(a), except that both parties may appeal a sentence of imprisonment that deviates from the sentencing range

> agreed upon pursuant to Fed. R. Crim. P. 11(c)(1)(C) as set forth in [the plea agreement.]  Dr. Nasher also knowingly and voluntarily waive[d] any right to seek appellate review of any claim or argument that (1) the statute of conviction, 21 U.S.C. § 841(a)(1) is unconstitutional, and (2) Dr. Nasher's conduct set forth in the Stipulation of Facts (Plea Agreement Exhibit A) does not fall within the scope of 21 U.S.C. § 841(a)(1).
>
> Dr. Nasher also knowingly and voluntarily waive[d] the right to challenge his guilty plea and conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.
>
> The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffectiveness of counsel.

<u>Id.</u>

Having reviewed the Findings and Recommendation filed by Magistrate Judge Eifert, the court hereby **OVERRULES** plaintiff's objections and adopts the findings and recommendations contained therein.  Accordingly, the court hereby **GRANTED** defendant's request for dismissal, **DENIED** plaintiff's motion under 28 U.S.C. § 2255, **DISMISSED** this case, and **DIRECTED** the Clerk to remove this case from the court's active docket.

Additionally, the court has considered whether to grant a certificate of appealability.  <u>See</u> 28 U.S.C. § 2253(c).  A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right."  28 U.S.C. §

2253(c)(2).  The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001).  The court concludes that the governing standard is not satisfied in this instance.  Accordingly, the court **DENIES** a certificate of appealability.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to plaintiff, pro se, and counsel of record.

**IT IS SO ORDERED** this 1st day of October, 2024.

ENTER:

*[signature: David A. Faber]*

David A. Faber
Senior United States District Judge